UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEBORAH HOGAN,


                                          Plaintiff,


                                                              DECISION AND ORDER

                                                              04-CV-6356L


                            v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,


                                          Defendant.

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security ("the Commissioner") that Deborah Hogan ("plaintiff") is

not disabled under Title II of the Social Security Act, and therefore, is not entitled to Social Security

Disability Insurance ("SSD") benefits.

Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to

FED. R. CIV. P. 12(c). For the reasons that follow, plaintiff's motion (Dkt. #3) is granted in part, the

Commissioner's motion (Dkt. #9) is denied, and this case is remanded pursuant to sentence four of

§ 405(g) for further administrative proceedings.

_____

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security
and is substituted for Commissioner JoAnne B. Barnhart as defendant in this action. FED. R. CIV.
P. 25(d)(1).

## PROCEDURAL BACKGROUND

Plaintiff was born on September 16, 1954. She has a General Equivalency Diploma and has worked as a factory machine operator and convenience store manager trainee. Plaintiff first applied for SSD benefits on November 7, 2002, alleging that she became disabled on March 20, 2002 based on neck, shoulder and back injuries she sustained in a car accident that day. Her application was denied and she did not appeal. She filed a second application on April 22, 2003, alleging the same disability and onset date. This application also was denied. A hearing was held before an administrative law judge ("ALJ") at which plaintiff appeared with counsel and testified. A vocational expert also testified. On April 20, 2004, the ALJ issued a decision finding that plaintiff was not disabled because she could perform other work in the national economy. The ALJ's decision became the final decision of the Commissioner on July 20, 2004, when the Appeals Council denied plaintiff's request for review. This action followed.

## DISCUSSION

### I.     Definition of Disability

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do [her] previous work but cannot, considering [her] age,

- 2 -

education, and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ." *Id.* at § 423(d)(2)(A).  To determine whether a person is disabled

within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen*

*v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

> The Second Circuit has described the five-step process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.     The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged

in substantial gainful activity since her alleged onset date. At step two, the ALJ found that plaintiff

had impairments that were severe within the meaning of the regulations, including degenerative disc

disease of the cervical and lumbar spines, myofascial pain syndrome, and obesity. At step three, the

ALJ determined that none of plaintiff's impairments either alone or in combination met or equaled

any listed impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ

found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, but

with several limitations.[2]  The ALJ also held, based on the testimony of the vocational expert, that plaintiff could not perform her past relevant work.  At step five, the ALJ determined that plaintiff was not disabled.  Again relying on the testimony of the vocational expert, the ALJ concluded that plaintiff retained the RFC to perform a significant number of jobs that existed in the national economy, including lens inserter, preparer, and surveillance systems monitor.

## III.     Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner.  *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law.  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773.  This Court must independently determine if the Commissioner's decision applied the correct legal

---

[2]  The ALJ concluded that plaintiff could not climb, balance, stoop, kneel, crouch or crawl on more than an occasional basis; she must avoid repetitive arm reaching in all directions with both upper extremities; and she must avoid reaching above the shoulder level with the right, non-dominant upper extremity.

standards in determining that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court must first review the legal standards applied, and then, if the standards were correctly applied, consider whether there is substantial evidence to support the ALJ's determination. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Plaintiff argues that the ALJ erred in evaluating her credibility, assessing her RFC, and questioning the vocational expert. Plaintiff also argues that the Commissioner failed to meet her burden at step five of proving that she had the RFC to perform a significant number of jobs in the national economy and that the vocational expert's testimony is not sufficient to support a finding of "not disabled." The Commissioner, on the other hand, claims that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence. I agree with plaintiff that the ALJ committed legal error requiring remand for further administrative proceedings.

## IV.    Credibility

The Commissioner erred in determining plaintiff's credibility. It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir.1984); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.). Where the ALJ's

credibility analysis and factual findings are based on application of the proper legal principles, the

Court may not examine the evidence and substitute its own judgment for that of the Commissioner.

42 U.S.C. § 405(g); *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980); *see also Glaze v. Barnhart*, 242

F.Supp.2d 233, 236 (W.D.N.Y.2003).

Plaintiff testified at the hearing that, after the car accident, pain prevents her from bending

her neck forward or turning her neck to either side to any great degree. She claims that when she

looks down, reads, or does dishes at the sink, after five minutes her neck starts to hurt significantly.

The pain then radiates down her back. If she can use her arms to adjust what she is reading and bring

it to eye level, she can read for approximately 15-20 minutes, at which time her arms grow tired. She

experiences neck pain everyday, sometimes severe. (T. 326-28). She claims that she can stand

approximately 10 minutes, sit one-half of an hour, and walk one block before her back begins to hurt.

Plaintiff also testified that she went to physical therapy from April 2002 until January 2004 without

any significant change in symptoms. She also had chiropractic treatment for eight months, used a

TENS unit and had acupuncture without any change.

In his decision finding that plaintiff was not disabled, the ALJ rejected plaintiff's complaints

about how pain affects her ability to perform work-related activities. The ALJ, therefore, did not

take into account the limitations plaintiff alleged when assessing her RFC. The ALJ's RFC finding

used at steps four and five is inconsistent with plaintiff's testimony about how pain limits her ability

to sit, stand, walk, and move her neck.[3]

---

[3] The ALJ determined that plaintiff could perform work at the sedentary level, which
normally involves lifting no more than 10 pounds at a time, as well as sitting up to 6 hours a day,
and standing or walking up to 2 hours a day. 20 C.F.R. § 404.1567(a); *see also* Social Security
(continued...)

I find that the ALJ improperly assessed plaintiff's credibility in accordance with the Commissioner's Regulations and Rulings, found at 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding her symptoms, including pain. "First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about [her] symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility." *Matejka v. Barnhart*, 386 F.Supp.2d 198, 205 (W.D.N.Y.2005) (citing *Murphy v. Barnhart*, No. 00 Civ. 9621, 2003 WL 470572, *10-11 (S.D.N.Y. Jan. 21, 2003) and 20 C.F.R. § 404.1529(c)).

Here, the ALJ never made a specific determination regarding whether plaintiff's degenerative disc disease of the cervical and lumbar spines, myofascial pain syndrome, and obesity could reasonably be expected to produce the pain in the back and neck she alleged. It is unclear whether the ALJ determined at the first step that plaintiff's impairments could not reasonably be expected to produce the pain she alleged, or whether he determined at the second step that plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain were not consistent with the objective medical and other evidence.

This is important because at the first step in the credibility analysis, "plaintiff's allegations *need not be substantiated by medical evidence, but simply consistent with it*. The entire purpose of

[3](...continued)
Ruling 96-9p, 1996 WL 374185, at *3 (S.S.A.).

- 7 -

section[] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." *Youney v. Barnhart*, 280 F.Supp.2d 52, 61 n.4 (W.D.N.Y.2003) (emphasis added); *see also* 20 C.F.R. § 404.1529(c)(3) ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms.... Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions ..., which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account ....").

In addition, "[o]nly allegations beyond what is substantiated by medical evidence are to be subjected to a credibility analysis. To require plaintiff to fully substantiate her symptoms with medical evidence would be both in abrogation of the regulations and against their stated purpose." *See Castillo v. Apfel*, No. 98 CIV. 0792, 1999 WL 147748, *7 (S.D.N.Y. Mar. 18, 1999) (citing *Harrison v. Sec'y of Health & Human Services*, 901 F.Supp. 749, 757 (S.D.N.Y.1995) and *Diaz v. Bowen*, 664 F.Supp. 725, 730 (S.D.N.Y.1987)).

Instead, the ALJ made a number of ambiguous statements that prevent the Court from determining whether findings about plaintiff's credibility ought to be upheld under the deferential standard of review. First, the ALJ stated that the Commissioner "may properly challenge the credibility of a claimant *who asserts eligibility based on subjective evidence*." (T. 14, emphasis added). This statement implies that plaintiff's only support for her disability claim was her own complaints, and that there was *no objective medical evidence* showing a physical impairment. This is not the case. The record contains sufficient objective medical evidence that plaintiff had severe

impairments, including several MRI reports showing, among other things, mild degenerative disc disease, mild stenosis, mild disc space narrowing, and diffuse posterior disc bulges of the cervical spine at various levels. (T. 150; 182-83; 265-66). There is other objective medical evidence consisting of reports and statements from examining physicians that plaintiff experienced muscle spasm in the neck and back, as well as decreased range of motion in the neck. (T. 189-90; 196; 215-19; 245-46).

Second, the ALJ stated that "the claimant's subjective complaints are found to be inconsistent with an individual experiencing such debilitating symptomology" and that "the clinical and objective fin[dings] are inconsistent with an individual who is unable to perform all substantial activity." (T. 15). Neither of these statements explains the basis for the ALJ's credibility determination under 20 C.F.R. § 404.1529 or Social Security Ruling 96-7p. The issue is not whether the clinical and objective findings are consistent with *an inability to perform all substantial activity*, as the ALJ concluded, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence. Social Security Ruling 96-7p, 1996 WL 374186, at *2.

The ALJ did carefully review the various factors relevant to the second step of the credibility determination, including plaintiff's daily activities, the type, dosage, and effectiveness of medications, other treatment to relieve pain, and the fact that no physician has recommended surgical intervention. *See* 20 C.F.R. § 404.1529(c). Nevertheless, the Court cannot determine whether the ALJ's findings based on those factors are the result of the proper application of the Regulations and

Rulings. In this respect, I make no determination regarding whether the ALJ's credibility analysis is supported by substantial evidence.

On remand, the Commissioner must clarify the basis of his credibility analysis and set forth his findings in accordance with the two-step process outlined in Social Security Ruling 96-7p and 20 C.F.R. § 404.1529.

## V.    Residual Functional Capacity

In addition, remand is required because the ALJ's RFC finding is based on legal error. The ALJ found that plaintiff retained the RFC to perform less than the full range of sedentary work. In reaching this conclusion, the ALJ did not cite to a medical opinion in the record. It is unclear whether the ALJ relied on the opinions of plaintiff's treating physicians, or the opinions of the examining and consulting physicians. In fact, there is very little in the record regarding plaintiff's ability to perform basic work activities. In this respect, the ALJ needs to further develop the record.

In making his RFC assessment, the ALJ also failed to provide a function-by-function assessment of plaintiff's ability to perform all of the exertional requirements of sedentary work. The ALJ did not specifically determine plaintiff's ability to sit, stand, walk, lift and carry. This was error. *See* 20 C.F.R. § 404.1545(b); Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.) ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). Moreover, it is unclear on what basis the ALJ concluded that plaintiff could not climb, balance, stoop, kneel,

crouch or crawl on more than an occasional basis; that she must avoid repetitive arm reaching in all directions with both upper extremities; and that she must avoid reaching above the shoulder level with the right, non-dominant upper extremity. No medical opinion is cited to support these conclusions.

It is well-settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir.1998). Because the ALJ failed to cite to any medical opinion to support his RFC findings, the Court is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion. *See Dailey v. Barnhart*, 277 F. Supp. 2d 226, 235 (W.D.N.Y. 2003).

In addition, the ALJ's RFC finding conflicts with certain medical opinions in the record, including that of Dr. William J. Kingston, a neurologist who performed an independent medical examine of the plaintiff for her insurance carrier. Dr. Kingston opined that "[i]n view of her chronic neck and back pain . . . she should avoid job[s] requiring twisting of the neck and trunk." (T. 196). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, 1996 WL 374184, at *7. Remand is required to correct these errors. *See White v. Secretary*, 910 F.2d 64, 65 (2d Cir. 1990) (ALJ's failure to set forth the basis for his RFC findings is reason enough to vacate his decision); *see also Ferraris v. Heckler*, 728 F.2d 582, 586-88 (2d Cir.1984); *Pronti v. Barnhart*, 339 F.Supp.2d 480, 490 (W.D.N.Y. 2004).

**VI. Other Errors**

Because the case is being remanded for further administrative proceedings, I note other errors that should be corrected on remand.

First, the ALJ was required to consider the effect that plaintiff's obesity had on the severity of her impairments and her residual functional capacity. *See Willoughby v. Commissioner*, 332 F.Supp.2d 542, 549 (W.D.N.Y.2004); *Shoate v. Barnhart*, No. C02-02162, 2003 WL 21556939, *4 (N.D.Cal. July 3, 2003)(remanding case where the ALJ did not consider the evidence of plaintiff's obesity in determining whether plaintiff suffered from a severe impairment or combination of impairments). The treating, examining, and review physicians all noted plaintiff's obesity. The ALJ also found that plaintiff's obesity was a severe impairment, but it is unclear whether the ALJ considered plaintiff's obesity at steps four and five of the disability evaluation.

The Commissioner's Rulings recognize that plaintiff's obesity could affect her exertional limitations and must be considered at steps four and five of the evaluation process. *See* Social Security Ruling 02-01p, 2000 WL 628049, at *6 (S.S.A.) ("Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. . . . An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. "). On remand, the Commissioner should consider the effects of plaintiff's obesity and set forth with particularity his relevant findings.

Second, on remand, the Commissioner should recall the vocational expert to clarify his testimony in certain important respects. On appeal, plaintiff attacked the sufficiency of the vocational expert's testimony regarding the number of jobs that exist in the national economy that she could perform. Plaintiff claims, among other things, that the vocational expert's testimony regarding the number of surveillance monitoring jobs does not constitute substantial evidence on which to conclude at step five that plaintiff is not disabled. Because the case is being remanded, I need not decide this question.

Nevertheless, on remand, the Commissioner should clarify on which job or jobs he is relying at step five to find that plaintiff was not disabled. At the hearing, the vocational expert testified that there were three different jobs that plaintiff could perform consistent with the ALJ's RFC finding. On appeal, however, the Commissioner argues that there are a significant number of *only* surveillance-systems-monitor jobs in the national economy, noting that he "does not rely upon the other jobs" (lense inserter and preparer) identified by the vocational expert. (Dkt. #9, p.26 n.10). Assuming it is only the job of surveillance systems monitor, the Commissioner must make a specific determination that there exists a significant number of that job in the national economy by itself to support a finding of "not disabled."

Moreover, there appears to be some confusion as to the basis for the vocational expert's testimony regarding the number of surveillance-systems-monitor jobs available that are consistent with plaintiff's RFC. After reviewing the record, I agree that the record is not clear as to how the vocational expert determined the number of such jobs. That confusion is compounded by the Commissioner's argument on appeal that it is "apparent" that the vocational expert "already decreased the number of jobs that exist in the national economy for this specific occupation. . . ." (Dkt. #9, p.27).

- 13 -

Because at step five the Commissioner bears the burden of proving that there exist a significant number of jobs in the national economy that plaintiff can perform, the basis of the vocational expert's testimony must be clarified and explained on remand.[4]

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. #3) is granted in part, the Commissioner's motion for judgement on the pleadings (Dkt. #9) is denied, and this case is remanded pursuant to sentence four of § 405(g) for further administrative proceedings

IT IS SO ORDERED.

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
June 19, 2007.

---

[4] Plaintiff argues that the Commissioner has the burden at step five to prove both the number of jobs in the national economy, as well as plaintiff's RFC. This was the holding of the Second Circuit's decision in *Curry v. Apfel*, 209 F.3d 117, 123 n.1 (2d Cir.2000), and the basis of the Commissioner's Acquiescence Ruling 00-4(2).

On September 25, 2003, however, the Commissioner amended the Regulations in several respects, and clarified that "the only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience. That shift does not place on us the burden of proving RFC." *See* 68 Fed.Reg. 51153, 51155, 2003 WL 22001943 (Aug. 26, 2003). Thus, 20 C.F.R. § 404.1560(c)(2) now provides that:

In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors. *We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.*

Because the case is being remanded, I decline to address plaintiff's arguments regarding the Commissioner's rescission of Acquiescence Ruling 00-4(2) and the amendments made to, *inter alia*, 20 C.F.R. § 404.1560, including whether the amendments exceed the Commissioner's authority.